FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 22, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                 Plaintiff,<br><br>    v.<br><br>FRANCISCO MORALES-<br>SANTIAGO,<br><br>               Defendant. | NO: 2:18-CR-120-RMP<br><br>ORDER GRANTING<br>DEFENDANT'S MOTION TO<br>DISMISS THE INDICTMENT |

BEFORE THE COURT is Defendant's Motion to Dismiss, ECF No. 41. Defendant argues that his prior removal order was invalid and cannot be used to prove an element of a charge of illegal reentry into the United States in violation of 8 U.S.C. § 1326. *Id.* A hearing was held in this matter on March 18, 2019. Defendant was present and represented by Assistant Federal Defender J. Houston Goddard. The Government was represented by Assistant U.S. Attorney Matthew F. Duggan. The Court has considered the parties' arguments, briefing, and the record, and is fully informed.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT ~ 1

**BACKGROUND**

Defendant was originally brought into the United States by his mother when he was fifteen years old to join Defendant's adoptive father in Brewster, Washington. ECF No. 41 at 5. He remained in the United States until he was deported in 2011. *Id.* at 8. The removal proceedings against Defendant began when he was issued a Notice to Appear on September 30, 2011. ECF No. 41-3. The Notice to Appear did not specify a time or date at which the hearing would take place. *Id.*

Defendant appeared at immigration court for preliminary proceedings on November 3, 2011. ECF No. 41 at 9. At the preliminary proceedings, the immigration judge advised Defendant of his right to hire an attorney and to apply for asylum, a withholding of removal, or protection under the convention against torture treaty. ECF No. 43. Additionally, the immigration judge advised Defendant of his right to voluntary departure. *Id.* This is what the immigration judge said about voluntary departure:

> You also have the right to apply for voluntary departure. There are two types: at your initial hearings or pre-conclusion or at your individual hearing at the conclusion of your case. For both, you must show that you have the means to depart, it will be under safeguards or in custody, that you have not been convicted for an aggravated felony offense, and the application is discretionary. The difference is for pre-conclusion, you must accept the decision as final. Now, at the conclusion of your hearing, you must also show that you have one-year continuous physical presence in the United States before the issuance of the Notice

to Appear, and that you have good moral character. You do have a right to appeal that decision to a higher court.

ECF No. 43.

Defendant's primary hearing was held on November 28. ECF No. 41 at 10. At the hearing, the immigration judge asked Defendant if he had any family who is a lawful permanent resident or United States citizen. ECF No. 43. He responded that his girlfriend was. *Id.* The judge asked if anyone filed a visa petition on behalf of Defendant. *Id.* He replied that no one had. *Id.* She asked if he had been involved with a driving under the influence and hit and run offense. *Id.* He replied that he was. *Id.* The judge then asked if Defendant had anything he wanted to say. *Id.* Defendant asked if he qualified for voluntary departure. *Id.* He stated that he had been in the United States for seven years, had graduated high school, and had minimal police records. *Id.* The judge found that Defendant was statutorily eligible for voluntary departure but denied the request as a matter of discretion due to Defendant's immigration and criminal history. *Id.*

Defendant was indicted for one count of felony reentry into the United States under 8 U.S.C. § 1326 on July 17, 2018. ECF No. 17. Defendant filed the present motion to dismiss on January 3, 2019. ECF No. 41. Defendant argues that his 2011 removal proceedings occurred without jurisdiction and violated his due process rights. *Id.* For these reasons, Defendant claims that the 2011 removal order cannot be used to prove an essential element of illegal reentry. *Id.*

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT ~ 3

## LEGAL STANDARD

Under Federal Rule of Criminal Procedure 12(b)(3)(B)(v), a defendant can move to dismiss an indictment that fails "to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). A court accepts the allegations in the indictment as true and determines whether the Government has charged the defendant with a cognizable offense. *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). "In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment." *Id.* A motion to dismiss an indictment that presents a question of law may be considered before trial. *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986).

## DISCUSSION

Defendant makes two arguments in support of his motion to dismiss the indictment. ECF No. 41. First, Defendant argues that the immigration judge did not have jurisdiction over Defendant's prior removal proceedings because his notice to appear did not contain a time and date at which the proceedings would take place. *Id.* at 11. Second, Defendant argues that the immigration judge violated his due process rights by failing to give him a chance to argue Defendant's right to voluntary departure. *Id.* at 15. Defendant argues that either of these two defects render the prior removal order invalid, and without a valid removal order, the Government cannot prove the essential elements of illegal reentry.

///

### *Lack of Subject Matter Jurisdiction Over Defendant's Removal Proceedings*

Defendant argues that his prior removal order is invalid because the immigration judge lacked subject matter jurisdiction over his case. ECF No. 41 at 11.

### *Statutory Scheme for Removal Proceedings*

Removal proceedings are governed by the Immigration and Nationality Act ("INA"), the Antiterrorism and Effective Death Penalty Act ("AEDPA"), and the Illegal Immigration Reform and Immigration Responsibility Act of 1996 ("IRRIRA"). The three acts together define "the manner in which the Attorney General is to exercise his authority to order aliens removed administratively." *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 882 (9th Cir. 2003). When a person is alleged to have been found unlawfully present in the United States, an immigration judge conducts the proceedings to determine whether the person should be removed. 8 U.S.C. § 1229a(a)(1). An immigration judge holds the exclusive authority to conduct removal proceedings. 8 U.S.C. § 1229a(a)(3).

The immigration laws allow the Attorney General to promulgate regulations guiding the actions of immigration judges presiding over removal proceedings. *Pereira v. Sessions*, 138 S. Ct. 2105, 2111 (2018). These regulations define the process by which an immigration judge obtains jurisdiction over a person's removal proceedings. *United States v. Rojas Osorio*, No. 17-CR-00507-LHK, 2019 WL 235042, at *6 (N.D. Cal. Jan. 16, 2019). Under the regulations,

"[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service." 8 C.F.R. § 1003.14(a). A "charging document" is "the written instrument which initiates a proceeding before an Immigration Judge," including a "Notice to Appear." 8 C.F.R. § 1003.13.

The statutes and the regulations have different definitions of a "Notice to Appear" for the purposes of removal proceedings. The statute states that removal proceedings are initiated by providing a "notice to appear," which "shall be given" to the person and must specify, among other things, the time and date at which the proceedings will be held. 8 U.S.C. § 1229(a)(1). The regulations' definition of a notice to appear does not require the notice to appear to contain the time and date at which the proceedings will be held. 8 C.F.R. § 1003.15(b)(6).

If a person is found to be unlawfully in the United States after a hearing in front of the immigration judge, the judge can order the person to be removed. *See* 8 U.S.C. § 1229a(c). After removal, if a person is again found in the United States, that person may be charged with illegal reentry. 8 U.S.C. § 1326. To prove illegal reentry, the Government must produce a valid prior removal order. *United States v. Raya-Vaca*, 771 F.3d 1195, 1201 (9th Cir. 2014).

### *Pereira v. Sessions*

In June of 2018, the Supreme Court considered notices to appear in relation to what is known as the "stop-time rule" in *Pereira v. Sessions*, 138 S. Ct. 2105

(2018).  In that case, Mr. Pereira was served with a document labeled "Notice to Appear" in 2006 that did not specify the time and date at which his removal proceedings would be held.  *Id.* at 2112.  After a copy of his notice was filed with the immigration court, the court mailed him an updated version of his notice to appear, specifying the time and date of his removal proceedings.  *Id.*  However, the updated notice was mailed to Mr. Pereira's street address rather than his PO Box (which Mr. Pereira provided when first served with his notice to appear) so Mr. Pereira never received the updated notice.  *Id.*  Mr. Pereira failed to appear at his immigration hearing and was ordered to be removed in absentia.  *Id.*

In 2013, Mr. Pereira was arrested for driving without his headlights on and was detained by DHS due to the outstanding order of removal.  *Pereira*, 138 S. Ct. at 2112.  At this point, Mr. Pereira had been present in the United States for over 10 years.  He applied for discretionary relief from the Attorney General to cancel his removal under section 1229b, which states that the Attorney General may cancel a person's removal if, among other things, the person has been physically present in the United States for a continuous period of at least 10 years.  *Id.*; *see also* 8 U.S.C. § 1229b(b)(1).  Continuous presence ends when the person "is served a notice to appear under section 1229(a) of this title."  8 U.S.C. § 1229b(d)(1)(A).  This is known as the stop-time rule.  Because Mr. Pereira was served a notice to appear in 2006, at which point he had not been present for more than ten years, the immigration court denied Mr. Pereira the ability to apply for cancelation of

removal. *Pereira*, 138 S. Ct. at 2112. Mr. Pereira argued that the notice to appear was defective because it did not specify the time or date at which the removal proceedings would be held, which is an essential element of a notice to appear under section 1229. *Id.* The immigration court rejected Mr. Pereira's argument, and the district court and First Circuit afforded *Chevron* deference to the immigration judge's interpretation of the stop-time rule. *Id.*

The Supreme Court reversed and held in favor of Mr. Pereira. It held that the immigration judge's interpretation of the stop-time rule could not be afforded deference if it conflicted with the plain language of the statute. *Pereira*, 138 S. Ct. at 2114. The statute states that the period of continuous presence ends when the person "is served a notice to appear under section 1229(a)," and section 1229(a) states that a notice to appear shall specify "the time and place at which the proceedings will be held." 8 U.S.C. §§ 1229(a)(G)(i); 1229b(d)(1)(A). Accordingly, the stop-time rule was not triggered by Mr. Pereira's notice to appear in 2006, and Mr. Pereira was permitted to apply for discretionary cancelation of his removal. *Pereira*, 138 S. Ct. at 2120.

Throughout the decision, the *Pereira* Court clarified that the question that they were considering was a narrow question: "Does service of a document styled as a 'notice to appear' that fails to specify 'the items listed' in § 1229(a)(1) trigger the stop-time rule?" *Pereira*, 138 S. Ct. at 2113. The dissent also classified the

question before the Court as "a narrow and technical issue of immigration law." *Id.* at 2121 (Alito, J., dissenting).

### Post-Pereira Application to Illegal Reentry Crimes

After *Pereira*, many persons charged with illegal reentry under section 1326 argued that their prior removals were invalid, and thus could not be used to prove illegal reentry, because their prior notices to appear did not contain the time and date of the removal proceedings. *See, e.g.*, *United States v. Virgen-Ponce*, 320 F. Supp. 3d 1164, 1166 (E.D. Wash. 2018). Using similar logic that the Supreme Court used in *Pereira*, these courts rejected the definition of a notice to appear under the regulations, and instead held that all notices to appear must include the time and date at which the proceedings will be held for jurisdiction to vest with the immigration court pursuant to the definition in 8 U.S.C. § 1229(a). *Id.* Therefore, because the notices to appear were improper, the immigration judges never had jurisdiction over the persons removed. *Id.* Without jurisdiction, the removal orders were invalid, and these courts dismissed the illegal reentry charges against these defendants. *Id.*

### Karingithi v. Whitaker

The Ninth Circuit addressed *Pereira*'s potential application to illegal reentry cases in *Karingithi v. Whitaker*, 913 F.3d 1158 (9th Cir. 2019). The *Karingithi* panel explained that "the regulations, not § 1229(a), define when jurisdiction vests" in the immigration court. *Id.* at 1160. Further, unlike the stop-time statute

considered in *Pereira*, the regulations make no reference to section 1229(a)'s definition of a notice to appear. *Id.* Because the regulations define when jurisdiction vests in the immigration court and make no reference to section 1229(a)'s definition of a notice to appear, the regulation's definition controls. *Id.* at 1161. Therefore, *Pereira* does not apply to challenges to the immigration court's jurisdiction. *Id.*

The *Karingithi* panel further held that serving a notice to appear that does not list the time and date of the immigration hearing only vests jurisdiction when a notice of hearing specifying the time and date is later served on the person. *Karingithi*, 913 F.3d at 1161. Citing a decision from the Board of Immigration Appeals, the panel found that "'a notice to appear that does not specify the time and place of an alien's initial removal hearing vest an Immigration Judge with jurisdiction over the removal proceedings . . . so long as a notice of hearing specifying this information is later sent to the alien.'" *Id.* (quoting *Matter of Bermudez-Cota*, 27 I. & N. Dec. 441, 447 (BIA 2018)). Therefore, as long as the person subject to removal proceedings is served with a notice of hearing that includes the date and time of the removal proceedings, then jurisdiction vests with the immigration court to conduct the removal proceedings.

### *Defendant's Arguments*

Defendant originally filed his notice to dismiss before *Karingithi* was decided. ECF No. 41 (filed January 3); *Karingithi*, 913 F.3d at 1158 (issued

January 28).  Recognizing the impact *Karingithi* has on the motion, Defendant submitted additional arguments that the Ninth Circuit did not consider in *Karingithi*.  ECF No. 53 at 2.

The first argument is that the regulations that define a notice to appear and define when jurisdiction vests in the immigration court  improperly conflict with section 1229(a)'s definition of a notice to appear.  ECF No. 53 at 2.  According to Defendant, the regulations should not be able to modify the definition of a notice to appear in the statute when those regulations are promulgated under the authority granted by the same statute.  *Id.*

Second, Defendant argues that the Ninth Circuit did not consider whether the Attorney General had the authority to determine that removal proceedings can begin without providing the time-and-place information required by section 1229(a).  ECF No. 53 at 4.  Essentially, Defendant argues that the relevant regulations were promulgated by the Attorney General ultra vires.  *Id.*

Third, Defendant argues that *Karingithi* is not controlling in this case because *Karingithi* concerned removal proceedings, not prosecution for illegal reentry.  ECF No. 53 at 5.  Defendant argues that extending *Karingithi* to illegal reentry cases would allow the Attorney General to "unilaterally establish an element of the crime of illegal reentry."  *Id.* at 5–6.

These arguments are not persuasive.  Defendant's first two arguments essentially ask this Court to determine whether the Attorney General acted lawfully

when the regulations at issue were promulgated. If this Court were to accept Defendant's arguments, this Court would be disregarding the Ninth Circuit's decision in *Karingithi*. The Court is bound by *Karingithi* and cannot disregard that decision, directly or indirectly.

Defendant's third argument also is not persuasive. While it is true that *Karingithi* concerned removal proceedings rather than illegal reentry, the panel considered the same question that is presently before this Court: whether an immigration judge has jurisdiction over an individual if the notice to appear lacks the time-and-date information for the individual's removal hearing. *See Karingithi*, 913 F.3d at 1158 ("We consider whether the Immigration Court has jurisdiction over removal proceedings when the initial notice to appear does not specify the time and date of the proceedings."). The petitioner in *Karingithi* similarly argued that *Pereira* controls in this situation. *Id.* at 1160–61. Even though the procedural posture of *Karingithi* is different from this case, the petitioner asked the same questions and presented the same arguments as Defendant does here, so the answers must be the same. The Court follows the Ninth Circuit's conclusion that *Pereira* does not prevent an immigration judge from obtaining jurisdiction over a person's removal proceedings when the initial notice to appear does not contain the time or date of the removal proceedings. *Id.* at 1161–62.

///

*Arguments Presented at Oral Argument*

On the morning of the hearing for this motion, the Government provided Defendant and the Court with a copy of a "Notice of Hearing in Removal Proceedings." ECF No. 54-1. According to the Government, this Notice of Hearing was served on Defendant by mail, through his custodial officer, and through DHS, as indicated by check marks on the document. *Id.* The Notice of Hearing is dated November 23, 2011, which is 54 days after Defendant was served an initial Notice to Appear and 20 days after Defendant's preliminary proceedings. *Id.*; ECF No. 41-3; ECF No. 41 at 9.

At oral argument, Defendant argued that he never received the second Notice of Hearing prior to his removal proceedings and moved the Court to exclude it from the record as being untimely and lacking reliability. ECF No. 55. The Government argued that the checked boxes on the document seem to indicate that Defendant had received the Notice of Hearing and offered the document as a business record exception to hearsay. *Id.*; *see also* ECF No. 52 at 2, 7. After hearing argument from both counsel , the Court noted that the document lacked any evidence of authenticity and failed to qualify as a business record exception because there was no competent evidence to lay the foundation for a business record exception. Therefore, the Court excluded the Notice of Hearing as inadmissible hearsay. ECF No. 55.

Without evidence of a valid Notice of Hearing in the record, Defendant argued that jurisdiction never vested with the immigration court because Defendant never received a valid notice of hearing. As the Government recognized in its brief, the *Karingithi* panel held that a Notice to Appear that does not state the time and date of the removal proceedings vests jurisdiction in the immigration court only upon service of a subsequent notice of hearing specifying this information. ECF No. 52 at 7; *Karingithi*, 913 F.3d at 1161. Here, the Court has no record of a properly-served Notice of Hearing on Defendant that included the time and date of the removal proceedings. Without a properly-served Notice of Hearing, the immigration court never had jurisdiction over Defendant's removal proceedings.

As the Government argued, the Defendant did appear at his preliminary proceedings on November 3, 2011, and his primary proceedings on November 28, 2011. ECF No. 41 at 9–10. Although Defendant's appearance at these hearings indicate that he knew the time and date of his proceedings, without proof that Defendant was served a Notice of Hearing, there is no evidence that Defendant received "proper notice of the time and place of his proceeding," as is required for jurisdiction to vest. *Bermudez-Cota*, 27 I. & N. Dec. at 447. Until Defendant received that "proper notice," jurisdiction did not vest with the immigration court.

There is insufficient evidence that Defendant's removal proceedings were conducted with jurisdiction. Therefore, the Court considers the removal order

entered pursuant to those proceedings invalid. A valid removal order is an essential element in the Government's case. Without the valid removal order, the indictment must be dismissed.

**Due Process**

Defendant also argues that the prior removal order is defective because he was not given a bona fide chance to argue his eligibility for voluntary departure. ECF No. 41 at 15.

A defendant charged with illegal reentry under 8 U.S.C. § 1326 has a due process right "to collaterally attack his removal order because the removal order serves as a predicate element of his conviction." *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1047 (9th Cir. 2004). To invalidate a prior removal order, a defendant must show that "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair."[1] 8 U.S.C. § 1326(d).

///

---

[1] The Court did not consider the section 1326(d) elements in Defendant's first argument because a defendant is entitled to relief from a defective notice to appear if the Immigration Court lacked jurisdiction. *See, e.g.*, *Lazaro v. Muskasey*, 527 F.3d 977, 980 (9th Cir. 2008).

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT ~ 15

### *Exhaustion of Remedies and Deprivation of Judicial Review*

A defendant can satisfy the first two prongs of section 1326(d) together upon a showing of one of three different scenarios. *United States v. Gonzalez-Villalobos*, 724 F.3d 1125, 1130 (9th Cir. 2013). First, both prongs are satisfied "when the [immigration judge] failed to inform the alien that he had a right to appeal his deportation order to the [Board of Immigration Appeals]." *Id.* Second, both prongs are satisfied when the immigration judge fails to inform the defendant that he is eligible for a certain type of relief. *Id.* Third, both prongs are satisfied if the defendant proves that his waiver of appellate rights was not considered and intelligent. *Id.* Absent any of these three situations, a defendant must independently satisfy the first two prongs of section 1326(d).

Defendant argues that he has proven the first two section 1326(d) elements through all three of the *Gonzalez-Villalobos* scenarios. ECF No. 41 at 25. First, he argues that the immigration judge failed to advise him of his right to appeal the judge's denial of voluntary departure, and in fact implied that he could not. *Id.* at 26. Second, he argues that the immigration judge failed to meaningfully advise Defendant of his right to voluntary departure or give him a chance to develop facts that would support granting voluntary departure. *Id.* Third, he argues that the judge's failure to explain his potential eligibility for voluntary departure created an appellate waiver that was not considered or intelligent. *Id.*

The Attorney General may permit a person to voluntarily depart the United States at the person's own expense and avoid receiving a removal order.  8 U.S.C. § 1229c.  A person is eligible for voluntary departure if the person has been physically present for one year prior to removal proceedings; the person has displayed good moral character for five years prior to the removal proceedings; the person has not committed an aggravated felony or terrorist-related crime; and the person can establish by clear and convincing evidence that he has the means to depart and intends to do so.  8 U.S.C. § 1229c(b)(1).

If a person is eligible for relief from deportation, the immigration judge must advise the person of his eligibility and give the person an opportunity to develop the issue.  *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000).  The failure to tell the person of such eligibility and give that person a chance to develop the issue deprives the person of judicial review because without an adequate record the person cannot possibly win an appeal.  *Id.*  If the immigration judge tells the person of his eligibility for voluntary departure but "almost in the same breath . . . [tells] him that he would not get the relief if he applied for it because he had a criminal record," the judge has deprived the person an opportunity to develop the person's eligibility on the record.  *United States v. Melendez-Castro*, 671 F.3d 950, 954 (9th Cir. 2012).  When a person appears *pro se*, the immigration judge is obligated to fully develop the record because people "appearing pro se often lack the legal knowledge to navigate their way successfully through the morass of

immigration law, and because their failure to do so successfully might result in their expulsion from this country." *Agyeman v. Immigration & Naturalization Servs.*, 296 F.3d 871, 877 (9th Cir. 2002). "An IJ cannot correct his failure to probe more deeply by simply asking the alien whether he has anything to add in support of his claim." *Lacsina Pangilinan v. Holder*, 568 F.3d 708, 709 (9th Cir. 2009) (internal quotations and citations omitted).

The topic of voluntary departure was briefly mentioned at Defendant's two immigration hearings. At Defendant's preliminary hearing, the immigration judge told Defendant that there are two types of voluntary departure and the requirements for meeting each of them in a limited number of sentences. ECF No. 43. The judge made no inquiry as to whether Defendant was interested in applying for voluntary departure at that time. *Id.* At his primary hearing, the immigration judge did not even mention voluntary departure until Defendant, appearing *pro se*, brought it up himself. *Id.* Absent Defendant's independent knowledge of voluntary departure, it appears unlikely the topic would have arisen during the primary hearing. *Id.* Although Defendant tried to argue his eligibility for voluntary departure, the immigration judge quickly denied him that relief without asking him to further explain his qualifications for voluntary departure. *Id.*

These facts show that Defendant has met the second and third *Gonzalez-Villalobos* scenarios: failure to be informed of a certain type of relief and an unintelligent appellate waiver, proving the first two prongs of section 1326(d).

1  *Gonzalez-Villalobos*, 724 F.3d at 1130.  While the immigration judge advised

2  Defendant of the availability of voluntary departure at his preliminary hearing, she

3  did not give him a chance to develop the issue at any point, including when he

4  independently inquired about the availability of voluntary departure.  *Arrieta*, 224

5  F.3d at 1079.  At the same time that she said that Defendant was statutorily eligible

6  for voluntary departure, she denied the relief as a matter of discretion, preventing

7  Defendant from fully developing the record.  *Melendez-Castro*, 671 F.3d at 954;

8  *Agyeman*, 296 F.3d at 877.  Even if the immigration judge asks Defendant if he has

9  anything to add at the end of the hearing, thereby giving Defendant an opportunity

10 to raise the issue of voluntary departure himself, does not cure the immigration

11 judge's failure to fully develop the record.  *Lacsina Pangilinan*, 568 F.3d at 709.

12        Defendant was not given an appropriate explanation of voluntary departure

13 and was denied the ability to explain his eligibility for the relief.  Therefore, the

14 judge failed to explain voluntary departure and, as a result, Defendant's waiver

15 was not voluntary or intelligent.  Thus, Defendant has satisfied the first two

16 elements of section 1326(d).

17        ***Fundamental Unfairness***

18        Upon meeting the first two section 1326(d) factors, a Defendant collaterally

19 attacking a prior removal order also must prove that the entry of the prior removal

20 order was fundamentally unfair.  8 U.S.C. § 1326(d)(3).  "An underlying removal

21 order is fundamentally unfair if: (1) [an alien's] due process rights were violated by

defects in the underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *United States v. Ortiz-Lopez*, 385 F.3d 1202, 1204 (9th Cir. 2004) (quoting *Ubaldo-Figueroa*, 364 F.3d at 1048) (brackets in original).

Immigration laws give immigration judges wide latitude to make discretionary decisions about voluntary departure, but that latitude does not "strip the inquiry of all guideposts." *Mabugat v. Immigration & Naturalization Serv.*, 937 F.2d 426, 432 (9th Cir. 1991). The immigration judge "must weigh both favorable and unfavorable factors" in coming to a determination on voluntary departure. *Campos-Granillo v. Immigration & Naturalization Serv.*, 12 F.3d 849, 852 (9th Cir. 1993) (quotation and citation omitted). If the immigration judge fails to evaluate all favorable and unfavorable factors for voluntary departure and assign weight and importance to each separately, and then all cumulatively, the immigration judge denied the person due process. *Id.*; *see also United States v. Frias-Flores*, 425 Fed. App'x 640, 642 (9th Cir. 2011).

The immigration judge did not weigh the favorable and unfavorable factors before making a determination on Defendant's voluntary departure. The immigration judge concluded that Defendant was statutorily eligible for voluntary departure. ECF No. 43. However, without explaining his statutory eligibility or weighing his positive equities against his negative equities, the immigration judge denied Defendant voluntary departure as a matter of discretion. *Id.* Defendant never had a chance to make his case for voluntary departure, and the immigration

judge failed to explain why she was denying his voluntary departure in spite of his positive equities.  The Court finds that Defendant's due process rights were violated in the underlying proceedings.

The Government argues that Defendant waived his due process rights by appearing for his immigration hearing.  ECF No. 52 at 12–14.  First, the Government misconstrues Defendant's due process argument.  The due process argument related to Defendant's eligibility for voluntary departure, whereas Defendant's jurisdictional argument concerned his notice to appear.  ECF No. 41 at 11.  Second, the consequences of the Government's arguments are troubling.  If Defendant is deemed to have waived any due process or jurisdiction arguments by simply showing up to the hearing, Defendant would be deprived of an adequate forum in which to present all arguments in his favor.  Further, if a person subject to removal proceedings is in the custody of the Department of Homeland Security, who brings him to his immigration hearing, Defendant would be viewed as "waiving" his jurisdictional or due process arguments by "appearing" at the hearing even though DHS brought him there against his volition.  Even if Defendant was not in custody, Defendant would face an impossible choice: show up at the immigration hearing and waive several arguments; or skip the hearing and face the consequences of failing to appear, including a determination of a removal in absentia, and subsequent arrest and detainment.  *See* ECF No. 41-3 at 2.  The Court rejects the Government's arguments as to due process.

After showing that his due process rights were violated, Defendant also must prove that he was prejudiced in order to prove fundamental unfairness. *Ortiz-Lopez*, 385 F.3d at 1204. To establish prejudice, a person must show that there were "plausible grounds" to grant him relief had the due process violations not occurred. *United States v. Reyes-Bonilla*, 671 F.3d 1036, 1049 (9th Cir. 2012). This requires a showing of some evidentiary basis upon which relief could have been granted, rather than the fact that the relief was theoretically possible. *Id.* at 1050.

There were several positive equities supporting voluntary departure that Defendant was prevented from arguing on the record. Defendant could have told the immigration judge about his family in the United States, including his fiancé and his mother. ECF No. 41-1 at 3. He could have presented the immigration court with his work and education record, including the college credits he earned while working and supporting himself. *Id.* He also would have been able to explain the circumstances behind his immigration history, which occurred when he was a child under his mother's control and which was one of the reasons that the immigration judge denied his voluntary departure as a matter of discretion. *Id.* at 4. It is plausible that, had this evidence been submitted, an immigration judge would have granted Defendant voluntary departure. Therefore, the Court finds that Defendant has satisfied the two prongs of the fundamental unfairness element of section 1326(d).

Defendant has satisfied all three section 1326(d) elements and shown that his due process rights were violated in the underlying removal proceedings. Therefore, Defendant's 2011 removal order cannot form the basis of an illegal reentry charge.

## CONCLUSION

The indictment charging Defendant with illegal reentry into the United States is dismissed. First, the immigration court never obtained jurisdiction over Defendant because he was not served with a proper Notice of Hearing specifying the time and date of his removal proceedings after being served with an incomplete Notice to Appear. *See Karingithi*, 913 F.3d at 1161–62. Alternatively, even if the immigration court is deemed to have had jurisdiction over Defendant's removal, the immigration judge violated Defendant's due process rights by failing to properly explain the requirements for voluntary departure, weigh the equities, or allow Defendant to develop a record of positive equities.

Accordingly, **IT IS HEREBY ORDERED**:

1.     Defendant's Motion to Dismiss, **ECF No. 41**, is **GRANTED**.

///

///

///

///

///

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT ~ 23

2. Defendant's Indictment, **ECF No. 17**, is **DISMISSED with prejudice**.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order and provide copies to counsel.

**DATED** March 22, 2019.

_s/ Rosanna Malouf Peterson_
ROSANNA MALOUF PETERSON
United States District Judge